**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**MICHAEL D. HOLLIDAY,**

      **Plaintiff,**

**vs.**                                                     **Case No. 5:12cv143-CAS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

_____/


<u>**MEMORANDUM OPINION AND ORDER**</u>

      This is a Social Security case referred to the undersigned upon consent of the parties and reference by District Chief Judge M. Casey Rodgers. Doc. 9. The Court concludes that the decision of the Commissioner should be affirmed.

**I.  Procedural History of the Case**

      On March 2, 2009, Plaintiff, Michael D. Holliday, applied for a period of disability and Disability Insurance Benefits (DIB) pursuant to Title II Social Security Act (Act) and also applied for Supplemental Security Income (SSI) benefits pursuant to under Title XVI of the Social Security Act (Act) for a period of disability with an alleged onset date of December 1, 2007. R. 10, 145, 150, 154. (Citations to the Record shall be by the symbol R. followed by a page number that appears in the lower right corner.)

Plaintiff's claims were denied initially on June 29, 2009, and upon reconsideration on November 23, 2009. *Id.* at 10, 70, 82, 84. On January 12, 2010, Plaintiff requested a hearing. *Id.* at 10, 86. On August 26, 2010, an evidentiary hearing was held in Jacksonville, Florida, and conducted by Administrative Law Judge Stephen C. Calvarese. *Id.* at 10, 19-20. Plaintiff was represented by David E. Evans, an attorney. *Id.* Charles K. Heartsill testified as an impartial vocational expert (VE). *Id.* at 10, 134-37 (Resume).

On September 22, 2010, the ALJ entered his Decision concluding that Plaintiff is not disabled. *Id.* at 18. On October 19, 2010, Plaintiff filed a request for review of the ALJ's decision. *Id.* at 5-6. On March 14, 2012, the Appeals Council denied Plaintiff's request for review. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

On May 14, 2012, Plaintiff filed a complaint requesting judicial review of the Commissioner's final decision. Doc. 1. Both parties filed memoranda of law, docs. 10 and 11, that have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "meets the insured status requirements of the Social Security Act through March 31, 2010." R. 12.

2. Plaintiff "has not engaged in substantial gainful activity since December 1, 2007, the alleged onset date." *Id.*

3. Plaintiff has several "severe impairments: depressive disorder, NOS; anxiety disorder with panic attacks and agoraphobia; r/o mild mental retardation; history of specific learning disorder; hypertension; obesity; low back pain; GERD; right shoulder pain with history of shoulder cuff tendonitis; and left knee pain." *Id.*

4.   Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 12.   Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06."  R. 13.   In making this finding, the" ALJ "has considered whether the "paragraph B" criteria are satisfied."  *Id.*   The ALJ found that Plaintiff "has *mild* restrictions in activities of daily living; *moderate* difficulties in maintaining social functioning; *moderate* difficulties in maintaining concentration, persistence or pace; and *no* episodes of decompensation."  *Id.*  (emphasis added).   The ALJ further found that because Plaintiff's mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied."  *Id.*  (emphasis added).   The ALJ also found that the evidence did not establish the presence of the "paragraph C" criteria.  *Id.*

5.   [Plaintiff] has the residual functional capacity [RFC] to perform unskilled medium work.   He can lift/carry 50 pounds occasionally and 25 pounds frequently.   He can stand/walk 6 hours and sit 6 hours in an 8-hour workday. He retains the capacity to remember work locations and procedures, and understand and remember short, simple instructions.   However, he has documented intellectual, achievement, and educational limitations; therefore, understanding, remembering, and carrying out detailed instructions might be somewhat more difficult.   He has some limitations in his ability to maintain attention and concentration for extended periods and to maintain a consistent work pace, and adherence to schedules might be compromised to some degree by psychological symptoms; however, a useful degree of ability remains intact.   He appears able to make simple work related decisions and sustain work activities without being overly distracted by coworkers or requiring special supervision.   However, he might be stress sensitive, lacking adequate coping skills to deal with the general public and might prefer to avoid contact with a [sic] large crowds of unfamiliar people.   *Id.* at 13-14.

6.   Plaintiff "is capable of performing past relevant work as a cook's helper and store laborer.   This work does not require the performance of work-related activities precluded by the claimant's [RFC]."   *Id.* at 17.

7.   Plaintiff "has not been under a disability, as defined in the Social Security Act, December 1, 2007, to the date of this decision."   *Id.* at 17.

## III.   Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.

42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial

evidence is more than a scintilla, but less than a preponderance. It is such relevant

evidence as a reasonable person would accept as adequate to support a conclusion."

Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord

Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual

findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284

F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four

factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining

physicians; (3) subjective evidence of pain and disability as testified to by the claimant

and corroborated by [other observers, including family members], and (4) the claimant's

age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.   20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.   A positive finding at step three results in approval of the application for benefits.   At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.   Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.   If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the

claimant is able to perform other work in the national economy in light of the claimant's

RFC, age, education, and work experience.   Phillips, 357 F.3d at 1237; Jones v. Apfel,

190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen,

786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If the Commissioner carries this burden, the claimant must prove that he or she cannot

perform the work suggested by the Commissioner.   Hale v. Bowen, 831 F.2d 1007, 1011

(11th Cir. 1987).

## IV.   Legal Analysis

### A.   Whether Substantial Evidence Supports the ALJ's RFC Determination and Whether the ALJ Correctly applied the Law

#### 1.   Plaintiff's Argument

Plaintiff does not disagree with the factual findings derived from the medical and

other evidence submitted to the ALJ during the evidentiary hearing.   *See* Doc. 10.

Rather, Plaintiff contends that the ALJ committed reversible error when he

determined that Plaintiff was capable of returning to his past relevant work as a cook's

helper and store laborer based on "the ALJ's clear misstatement of the findings of Life

Management where the Plaintiff had GAF scores of 50 on at least two occasions, which

the ALJ referred to as moderate symptoms when in fact, this implies severe symptoms."

Doc. 10 at 10.   Plaintiff further argues that because the ALJ improperly addressed the

severity of Plaintiff's mental impairments, this error resulted in hypothetical questions

posed to the vocational expert that were not accurate and led to an erroneous

determination that Plaintiff could return to his past relevant work.   *Id*. at 13-14.

**2. The Commissioner's Argument**

The Commissioner agrees that the ALJ was mistaken in stating that Plaintiff's GAF score of 50 represents *moderate* symptoms rather than *severe* symptoms. Doc. 11 at 12. Notwithstanding, the Commissioner argues that Plaintiff's focus on the two GAF 50 scores ignores evidence that Plaintiff's anxiety and panic attacks improved after receiving counseling sessions and medication and that his "current GAF" score was assessed as high as 55 on visits to the Life Management Center of Northwest Florida, Inc. (Life Management Center) on May 30, 2009, and July 25, 2009, on August 22, 2009; and that his GAF score was 55 on June 23, 2010. *Id.* According to the Commissioner, "[t]he record shows a progression with treatment to no more than moderate symptoms" and, therefore, the ALJ's misstatement and any error is harmless. Doc. 11 at 12-13. The Commissioner also argues that the ALJ properly described Plaintiff's RFC to the vocational expert and, thus, no error was shown when the ALJ concluded that Plaintiff could perform past relevant work. *Id.* at 13-14.

**3. The Evidence and the ALJ's Findings and Conclusions**

Medical and other evidence presented to the ALJ is set forth in the ALJ's Decision at pages 13 through 17 and is incorporated herein. R. 13-17. Plaintiff's hearing testimony is summarized by the ALJ throughout his Decision and is also incorporated herein. *See, e.g., id.* at 14-17.

After determining that Plaintiff has not engaged in substantial gainful activity since December 1, 2007, and that Plaintiff has several severe impairments, *id.* at 12, the ALJ found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals one of the listed impairments. *Id.*[2] Plaintiff does not

challenge this determination.

The ALJ found that Plaintiff had *mild* restrictions of daily living; *moderate*

difficulties in social functioning; and *moderate* difficulties in concentration, persistence,

or pace; and *no* episodes of decompensation, which have been of an extended

duration. *Id.* at 13. The ALJ found that the paragraphs "B" and "C" criteria were not

met. *Id.* Nevertheless, the ALJ stated that the paragraph "B" criteria are not a RFC

> assessment but are used to rate the severity of mental impairments at steps 2
> and 3 of the sequential evaluation process. The mental [RFC] assessment
> used at steps 4 and 5 of the sequential evaluation process requires a more
> detailed assessment by itemizing various functions contained in the broad
> categories found in paragraph B of the adult mental disorders in 12.00 of the
> Listing of Impairments (SSR 96-8p). Therefore, the following [RFC]
> assessment reflects the degree of limitation the [ALJ] has found in the
> "paragraph B" mental function analysis.

*Id.*

In light of this framework and before considering step four of the sequential

evaluation process, the ALJ made findings regarding Plaintiff's RFC following a

two-step process: (1) whether there is an underlying medically determinable physical or

mental impairment that could reasonably be expected to produce the Plaintiff's pain or

other symptoms; and (2) if so, whether the intensity, persistence, and limiting effects of

Plaintiff's symptoms limit Plaintiff's functioning. At this point, the ALJ discussed the

relevant medical and other evidence presented. *Id.* at 14-17.

The ALJ provided a detailed summary of Plaintiff's hearing testimony, including

---

[2] The ALJ analyzed this issue in light of Listings 12.02 (organic mental disorders),
12.04 (affective disorders), and 12.06 (anxiety related disorders) set forth in 20 C.F.R.
Part 404, Subpart P, Appendix 1. R. 13.

his difficulties in eighth grade special education; quitting ninth grade and attending adult

school; and completion of the eleventh grade.   *Id*. at 14.   Additional testimony is

recounted:

> The claimant testified that he last worked as a city road department truck driver. He stated that he also had past work as a general laborer, fast food cook, stock person, and food prep.   The claimant testified that he sustained a work related injury to his right shoulder and settled his worker's compensation claim for $4,200.   He stated that Dr. Wong restricted him to a 10-pound weight limit. The claimant testified that he injured his left knee in a MVA and that he was unable to stand on hard surfaces for more than an hour due to pain and fluid buildup. He stated that he could walk 200 yards, but then his knees swelled.   He stated that he could only sit 20 minutes before his knees started hurting and got stiff.   The claimant testified that he had not seen Dr. Alexander in a while.   He stated that he underwent a MRI, which revealed two bulging discs.   He stated that the injections did not help and he did not want to undergo surgery.   The claimant testified that he passed out several times in 2004-2005 due to pain attacks, which occurred twice a day and lasted 10 minutes to an hour for the first two years.   He stated that the medications did not help and he did not know what triggered them.   He stated that he could not be around a crowd of people and watching television could trigger a panic attack.   The claimant testified that he had to go grocery shopping at night when there were not a lot of people there. He stated that he also suffered from depression and cried a lot.   He stated that he went to Life Management for anxiety medication.   The claimant testified that he lived with his wife and 9-year-old daughter.   He stated that he drove his daughter to and from school, and went to church once a week.   The claimant testified that he used the microwave and washed dishes occasionally.   He stated that he could not bend to mop or stoop to lift anything.   The claimant testified that he could hold a hammer, but not nail with his right hand due to decreased grip strength.   He stated that he could not pick up fine things or reach overhead with his right hand.   The claimant testified that he could reach with his left hand, lift a gallon of milk with both hands, and climb stairs with pain.

*Id*. at 14-15; *see id.* at 22-56 (Plaintiff's hearing testimony).

The ALJ reviewed Andrew Wong, M.D.'s, medical records covering the period

November 10, 2004, through January 10, 2005.   Plaintiff was diagnosed with right

shoulder pain and right shoulder cuff tendonitis versus occult tear of the subscapularis.

*Id*. at 15, 297-305.   On January 10, 2005, Dr. Wong opined that Plaintiff was restricted

to sedentary work with no lifting. *Id.* at 15, 297. The ALJ gave "appropriate weight" to Dr. Wong's opinion, but stated that "his opinion is not supported by objective medical findings and it is inconsistent with the evidence of record when considered in its entirety." *Id.* at 15. The ALJ also noted that Dr. Wong's opinion "was given three years prior to the claimant's alleged onset date [December 1, 2007] and the claimant performed work activity after January of 2005 at the medium to heavy levels of exertion." *Id.*

Relevant here, the ALJ discusses Plaintiff's medical records from Life Management Center for the period covering November 1, 2008, through February 7, 2009 (first period), *id.* 15, 321-28, 503-09, and from May 30, 2009, through June 23, 2010 (second period), *id.* at 16, 407-12, 492-501.[3]

During the first period, Plaintiff was diagnosed with anxiety disorder, NOS; depressive disorder, NOS; r/o (rule out) bipolar disorder; r/o post traumatic stress disorder; and r/o panic disorder with agoraphobia. *Id.* at 15, 321-28, 503-09. Throughout this period, Plaintiff was assigned a Global Assessment of Functioning (GAF) Axis V Scale rating of *50* on three occasions. *Id.* at 15, 322, 325, 327, 504, 506, 508.[4]

---

[3] The ALJ also discusses Plaintiff's medical records from Cardiology Associates from August 1, 2006, through March 6, 2009, noting several diagnoses such as "palpitations, chest pain, history of GERD, history of anxiety, s/p (status post) cholecystectomy, history of tobacco use, and hypertension (Exhibit 5F)." *Id.* at 15, 331-42. X-rays of Plaintiff's right knee performed on May 27, 2009, were normal. *Id.* at 15, 374 Medical records from Blountstown Family Medicine from February 25, 2003, through September 9, 2009, show Plaintiff was diagnosed with "chronic low back pain, degenerative disc disease, panic attacks, hypertension, GERD, sinusitis, bronchitis, left costochondritis, anxiety, depression, dehydration, and tachycardia (Exhibits 6F and 15F)." *Id.* at 16, 343-67.

The ALJ stated that this score represented "*moderate* symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers) (Exhibit 4F)." *Id.* at 15 (emphasis added).

During the second period, Plaintiff was diagnosed with generalized anxiety disorder, NOS; depressive disorder, NOS; bipolar disorder, NOS; personality disorder; rule out panic disorder with agoraphobia; hypertension; and acid reflux. *Id.* at 16, 407-12, 492-502. Plaintiff was assigned GAF scores between 50 and 55. The ALJ stated that these ratings represent *moderate* symptoms. *Id.* at 16. Plaintiff's GAF scores during the second period are: *50-55*-May 30, 2009, *id.* at 411, 501; *50*-June 27, 2009, *id.* at 409, 499; *55*-July 25, 2009, *id.* at 407, 497; *55*-August 22, 2009, *id.* at 494; and *55*-June 23, 2010, *id.* at 492.[5]

On May 25, 2009, Plaintiff underwent a consultative psychological evaluation by Dr. Horvat. *Id.* at 15, 369-72. As noted by the ALJ, "[u]pon examination, attention and concentration were normal, but memory was limited. He was oriented times four. Mood

---

[4] On February 7, 2009, Cymbalta was discontinued and Plaintiff was started on Effexor and continued on Vistaril. *Id.* at 322. Plaintiff had a brief (20 minutes) "pharmacologic management" assessment. Most "required elements" were within normal limits. *Id.* at 323. He was assessed as "dysphoric" under mood and effect; assessed moderate under anxiety, although panic attacks/4 and cannot handle being around people and reading disability are noted.

[5] "In July of 2009, [Plaintiff] reported doing better. His mood was better and calmer. He was still having panic attacks, but they had decreased. [*Id.* at 497] In August of 2009, he reported his moods were stable. His primary concern was anxiety and panic attacks. [Id. at 494-95] In June of 2010, [*id.* at 492-93] it was noted that the claimant had not been seen in several months and he had been out of medications (last seen 8/09) (Exhibits 13F and 20F)." *Id.* at 16, 492-98.

and affect were depressed. He appeared to be of below average intelligence based upon verbal and math skills.   Dr. Horvat's diagnosis was anxiety disorder with panic attacks and agoraphobia, posttraumatic stress disorder, and r/o mild mental retardation (Exhibit 7F)."   *Id.*   (Dr. Horvat noted that Plaintiff's "previous GAF was 50," which was assessed on February 7, 2009, *id.* at 504.   As noted above, Plaintiff had a "current" GAF score of 50-55 on May 30, 2009, *id.* at 501.)

After considering this evidence, including Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."   *Id.* at 16.   The ALJ gave several reasons for his RFC assessment, including consideration of Plaintiff's description of his daily activities, which the ALJ found "are not as limited to the extent one would expect, given [Plaintiff's] complaints of disabling symptoms and limitations"; treatment that "has been essentially routine and/or conservative in nature"; periods of time when Plaintiff did not take medications for his symptoms; essentially normal psychological and physical consultative examinations "documenting only mild limitations"; and prescribed medications when taken by Plaintiff have been "relatively effective in controlling [his] symptoms."   *Id.*

Other factors influencing the ALJ's determination include Plaintiff's

generally unpersuasive appearance and demeanor while testifying at the hearing.   It is emphasized that this observation is only one among many being relied on reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's [RFC].   The undersigned notes that the claimant

portrayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's [RFC]. Furthermore, the [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also support a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those physicians do deserve some weight, particularly in a case like this in which there exist a number of other reasons to reach similar conclusions. These physicians concluded that the claimant could perform unskilled, medium work.

*Id.* at 16-17.

### 4. Whether the ALJ Committed Reversible Error

### a. The GAF Scores

The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000) includes the GAF Scale that is primarily used by mental health practitioners. The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 30-32, 34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id.* at 32. *See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing the GAF scale).

The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no

'direct correlation to the severity requirements of the mental disorders listings.'" <u>Wind v. Barnhart</u>, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

A GAF scale rating of 41-50 is indicative of *serious* symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any *serious* impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34. A GAF scale rating of 51 to 60 indicates *moderate* symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or *moderate* difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DSM-IV-TR at 34.

Plaintiff is correct that a GAF 50 score is at the top of the 41-50 range and indicates serious symptoms, not moderate symptoms. DSM-IV-TR at 34. Thus, the ALJ was mistaken when he concluded that Plaintiff's November 1, 2008, November 26, 2008, and February 7, 2009, GAF 50 scores represent moderate symptoms. *Id.* at 15. The issue to be resolved is whether the error is reversible error.

As noted above, Plaintiff received counseling from the Life Management Center from November 1, 2008, through February 7, 2009, and from May 30, 2009, through July 23, 2010. On June 7, 2009, Dr. Horvat stated that Plaintiff had a prior GAF score of 50, consistent with the three GAF 50 scores assessed during the first period. *Id.* at 369. During the second period, Plaintiff was assigned a GAF scale range of 50-55 on May 30, 2009, *id.* at 411, 501; a GAF 50 score on June 27, 2009, *id.* at 409, 499; and GAF 55 scores on July 25, 2009, and August 22, 2009, *id.* at 15-16, 407, 411, 494, 497.

By June 23, 2010, Plaintiff's GAF score was also 55, within the moderate symptom range, even though he was out of medication and had not returned for treatment for several months. Plaintiff also reported "still having anxiety," although "when he was on the Lamictal he said it was helping a lot with the depression. He wasn't as depressed." Plaintiff was prescribed "some Doxepin" and "back on Lamictal." *Id.* at 492.

The Commissioner argues that the ALJ's mistaken reference to Plaintiff's GAF 50 score, *id.* at 15, and mistaken reference to the Plaintiff's GAF range of 50-55, *id.* at 16, as representing moderate symptoms, is harmless because substantial evidence supports the ALJ's determination that Plaintiff suffers no more than moderate symptoms. The Commissioner's argument is well-taken.

The ALJ properly discussed the evidence regarding Plaintiff's mental impairments. Substantial evidence supports the ALJ's findings that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation, a point not disputed by Plaintiff.[6]

---

[6] The harmless error doctrine has been applied in social security disability cases. Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) (applying harmless error doctrine); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (determining that ALJ made erroneous statements of fact, but holding that error was harmless in the context of case). *See also* Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009) (stating that burden of showing that error is harmful normally falls upon party attacking agency's determination). Under certain circumstances, an ALJ's failure to evaluate a GAF score can constitute reversible error when the claimant received repeatedly low GAF scores that indicate severe impairments or when the ALJ misinterprets the score. *See, e.g.,* McCloud v. Barnhart, 166 F. App'x 410, 418 (11th Cir. 2006). Notwithstanding the ALJ's mistaken reference to Plaintiff's GAF 50 scores and GAF range of 50-55 as moderate, and even if the GAF 50 scores were considered evidence of a severe impairment, there is no showing that this impairment remained severe and lasted the requisite period of time.

### b.  The Hypothetical Posed to the Vocational Expert

Plaintiff also argues the ALJ erred when the hypothetical question posed to the vocational expert did not include the severity of Plaintiff's mental impairments.   Doc. 10 at 13-14.

Mr. Heartsill, the vocational expert (rehabilitation counselor), testified during the hearing.   R. 56-62.   He reviewed the file and Plaintiff's testimony.   He described Plaintiff's past work as a *concrete mixing truck driver* that is semi-skilled and performed at the medium and heavy level; *construction laborer*, also semi-skilled, heavy work as described and as performed by Plaintiff; *construction worker II*, unskilled, very heavy work as described and as performed by Plaintiff; *laborer of stores,* unskilled, medium work as described and as performed by Plaintiff; *cook, fast food worker*, skilled, medium work as described and as performed by Plaintiff; *log roller*, unskilled, medium work as described and medium to heavy as performed by Plaintiff; and *cook helper*, unskilled, medium work as described and as performed by Plaintiff.   *Id.* at 17, 56-58, 276.

The ALJ requested Mr. Heartsill to consider a series of hypothetical questions. *Id.* at 59-62.   The facts included Plaintiff's age of 31; eighth grade education; poor ability to read, write, and use numbers; and past work history described above.   The ALJ included "DDS restrictions" provided by medical consultant, Clarence Louis, M.D., on November 20, 2009, Exhibit 19F (Physical RFC Assessment).   R. 59-60, 483-90.

---

*See* 20 C.F.R. §§ 404.1505(a), 416. 905(a) (disability defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months.")   *See also* <u>Taylor v. Comm'r of Soc. Sec.</u>, Case No. 6:11-cv-1756-Orl-22DAB, 2012 U.S. Dist. LEXIS 155358, at *15-18 (M.D. Fla. Oct. 10, 2012).

The ALJ also included facts from the November 4, 2009, Mental RFC

Assessment, Exhibit 18F, completed by Judith LaMarche, Ph.D.   *Id.* at 60, 479-81.[7]

> Here we have *moderate* restrictions on the ability to understand, remember, and carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruption from psychologically-based symptoms; and to perform at a consistent pace without unreasonable number and length of rest periods; and to set realistic goals and make plans independently of others.   I'm looking at the functional capacity assessment on page 3.   This person can make -- and so simple work, simple tasks, and sustain the work activities without being distracted by others.   This person may have – may be stress sensitive and lack coping skills.

*Id.* at 60 (emphasis added); *see id.* at 479-81.   The ALJ clarified: "[l]ack [of] coping

skills."   *Id.* at 60.   Mr. Heartsill requested a definition "of to what degree, how it affects

functions."   *Id.*   The ALJ continued: "Yeah.   This problem with the stress sensitive

and lacking coping skills, it primarily deals with the general public and so this person

should avoid contact with the general public.   And also avoid contact with large crowds

of unfamiliar people.   So avoid general public and large crowds.   That seems to be the

main problem areas for the sensitivity in the coping problems."   *Id.*   The ALJ advised

that "those are the primary restrictions" and then asked: "With those restrictions would

there be any jobs in the regional or national economy that such a person could perform,

---

[7] Dr. LaMarche also completed a Psychiatric Review Technique (PRT) on November 4, 2009.   *Id.* at 465-78.   Dr. LaMarche reviewed relevant facts in light of Listings 12.02, 12.04, and 12.06.   *Id.* at 465-66, 468, 470.   Dr. LaMarche opined that Plaintiff had *mild* restrictions of activities of daily living; *moderate* difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and *no* episodes of decompensation.   *Id.* at 475; *see id.* at 477 (Dr. LaMarche consultant's notes).   James Mendelson, Ph.D., completed a Mental RFC Assessment on June 15, 2009, and reached similar conclusions.   *Id.* at 380-82.   Dr. Mendelson also completed a PRT on June 15, 2009, and reached the same conclusions as Dr. LaMarche regarding Plaintiff's functional limitations.   *Id.* at 384, 394, 475.

first of all considering any past relevant work?" *Id.* at 61. Mr. Heartsill opined that

"cook helper" and "laborer, stores" would be within the hypothetical, "[w]ith the definition

at moderate means some limitation but activity not precluded" pursuant to the

Dictionary of Occupational Titles (DOT) and as performed. *Id.*

The ALJ also provided Mr. Heartsill with an additional factor to consider from a

January 10, 2005, patient note from Dr. Wong (Exhibit 3, page 2) that stated: "WORK

STATUS: Sedentary duty with no lifting." *Id.* at 61-62; *see id.* at 297. After

considering this additional factor, Mr. Heartsill opined that a "no lifting" restriction would

preclude any work as all jobs require some lifting. *Id.* at 62. The ALJ considered

Dr. Wong's opinion, but found that it was inconsistent with the evidence of record, was

given three years prior to Plaintiff's alleged onset date, and that Plaintiff performed work

activity after January 2005 at the medium to heavy levels of exertion. *Id.* at 15.

Plaintiff alleged that his onset of disability began on December 1, 2007. *Id.* at

10. Plaintiff first sought the valuation of the Life Management Center on November 1,

2008. *Id.* at 15, 326. The ALJ considered Plaintiff's medical records for the period

covering November 1, 2008, through February 7, 2009, *id.* at 15, and from May 30,

2009, through July 23, 2010, *id.* at 16. Plaintiff's treatment for depression and anxiety

was conventional; he was prescribed medication for depression and anxiety and

referred for counseling. *Id.* at 327. His GAF scores improved with treatment to reflect

moderate limitations of symptoms or occupational and social functioning, from July 25,

2009, to June 23, 2010. *Id.* at 492, 494, 497.

The ALJ determined that Plaintiff retained the RFC to perform unskilled medium

work.   *Id.* at 15-17; 20 C.F.R. §§ 404.1567(c); 416.967(c).[8]   This finding properly

described Plaintiff's work-related limitations from mental impairments and is supported

by substantial evidence.

In conclusion, the record does not support Plaintiff's allegation that he suffered

mental work-related limitations in excess of those described in the RFC or that his GAF

50 scores were indicative of severe functional limitations.   *Id.* at 13-17.   The ALJ

included restrictions due to Plaintiff's proven mental impairments, which were

consistent with the entire record.   Therefore, substantial evidence supports the ALJ's

RFC determination.

## V.   Conclusion

Considering the record as a whole, the findings of the ALJ are based upon

substantial evidence in the record and the ALJ correctly followed the law.   Accordingly,

pursuant to 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's

application for Social Security benefits is **AFFIRMED** and the Clerk is **DIRECTED** to

enter judgment for the Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on January 8, 2013.


<u>s/   Charles A. Stampelos</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

---

[8]   The RFC is what a claimant can still do despite his limitations.   *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).   It is an assessment based upon all of the relevant evidence including a claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records.   *Id.*   The responsibility for determining a claimant's RFC lies with the ALJ.   *See* 20 C.F.R. §§ 404.1546(c), 416.946(c).

Case No. 5:12cv143-CAS